FILED

DEC 1 5 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>vs.<br><br>CHAD E. ROCCA,<br><br>          Defendant. | A05-101 CR (JWS/JDR)<br><br>**RECOMMENDATION<br>REGARDING<br>MOTION TO SUPPRESS**<br><br>(Docket No. 12) |

Defendant **Chad Rocca** moves to suppress a shotgun seized as a result of the warrantless search of his home on August 13, 2005. Docket No. 12. The motion is opposed by the government on grounds that the entry to Mr. Rocca's trailer was justified by exigent circumstances and his consent to the entry of the trailer to search for his gun. Docket No. 14. An evidentiary hearing was conducted



on December 2 and 5, 2005.  On Upon due consideration of the evidence adduced and arguments of counsel, **the magistrate judge recommends that the Motion to Suppress to be denied.**

## FINDINGS of FACT

On August 13, 2004 about 5:30 p.m. the Anchorage Police Department received a telephone call from Wonola Pennleton, the mother of Chad E. Rocca. The mother expressed concern that her son had mental problems, and she believed he may not be taking his medication and had threatened a neighbor with a gun about an hour earlier.  She provided her son's address.  Shortly thereafter APD Dispatch dispatched APD Officers Stephen Hill and Ross Henikman to conduct a welfare check in a trailer park at 1200 Tongass St, the address for Chad Rocca.  APD Officers Hill and Henikman arrived at the scene followed shortly thereafter by Officers Kevin Pridemore and Wurst.  The officers parked their patrol cars several trailers to the west in order to conceal their arrival.  Officer Hill accompanied by Officer Wurst went to the rear of the trailer while Officers Henikman and Pridemore proceeded to the front of the trailer located on the north side.  Officer Pridemore carried a department issued shotgun in a sling.  Officer Henikman had his service pistol out at "low ready."

Officer Henikman knocked loudly on the front door of Rocca's trailer. After some delay Rocca answered the door and Officer Henikman asked him if they

could talk to him. There was no discussion about whether Rocca could decline to consent to talk with the officers. When Rocca readily agreed, the officers asked him to step outside. Officer Honikman holstered his pistol and conducted a quick pat-down search of Rocca. Officer Henikman conducted a brief dialogue with Mr. Rocca during which he attempted to establish the present mental status of Rocca including any suicidal tendencies. Rocca appeared normal to the officer and in response to his question told the officer that he was not "hearing voices." Officer Pridemore was aware of a CAD dispatch that had mentioned a Glock pistol found from a previous call to that location. He asked Rocca if there were any weapons and Rocca stated there was a shotgun inside. Officer Pridemore then asked if they could go in and make sure that it was not stolen. Officer Pridemore's shotgun was pointed downward when he spoke to Rocca. Rocca agreed and told the officers where the shotgun was located. The conversations with Mr. Rocca were carried out in a normal civilized dialogue.

After the consent to enter was given by Rocca, Officers Hill and Pridemore performed a security check of the residence and recovered a shotgun from the back room of the trailer. The shotgun was located where Rocca had indicated it would be found. Officer Henikman measured the shotgun and determine that it was too short to be legal. Mr. Rocca was arrested for possession of a sawed-off shotgun and place in custody about 6:16 p.m.

3

A few minutes after the first officers reached the scene, Officer Roy Vincent LeBlanc arrived. When Officer LeBlanc arrived the other officers had already made contact with Rocca who was outside the trailer. Sgt. LeBlanc was there as a supervisor and remained at the scene for about 15 minutes.

## Conclusions of Law

Anchorage police officers were dispatched to Mr. Rocca's trailer residence to conduct a welfare check in response to a long distance telephone call from Rocca's mother stating in effect that Rocca was mentally ill, not taking his medication, had talked about killing his neighbors and threatened them with a gun only an hour before and was a potential danger to himself, his daughter and the neighbors. The officers had a legal right to visit Rocca's trailer in carrying out their community care-taking interests. The officers were not investigating a particular crime nor were they required to do so in order to appear at the trailer and make contact with Mr. Rocca. The preservation of life and protection against serious bodily injury is a sufficient justification for intruding upon a person's privacy interests. United States v. Cervantes, 219 F.3d 882 (9th Cir. 2000). Given the circumstances, the officers had reasonable grounds to believe there existed an immediate need for their assistance. Cf. Martin v. City of Oceanside, 360 F.3d 1078 (9th Cir. 2004).

After approaching the trailer an officer knocked on the door and eventually Mr. Rocca responded to the call. The officers identified themselves and

explained their purpose in calling upon him. The officers asked Rocca if he had a shotgun in his trailer. After he acknowledged that he did the officers asked for permission to go inside the trailer and check the shotgun to see if it was stolen. The government relies upon Rocca's consent to enter the trailer. The government bears the burden of proving by a preponderance of the evidence that Rocca's consent was freely and voluntarily given. See United States v. Rosi, 27 F.3d 409. In determining whether a consent was given in the particular case the court considers the totality of the circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973). Free and voluntary consent cannot be found merely by a showing of acquiescence to a claim of lawful authority. United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1990). The government must show that "there was no duress or coercion, expressed or implied" and that the consent "was unequivocal and specific" and "freely and intelligently given." Id.

The court first determines from the totality of the circumstances whether the consent was voluntarily given. The Ninth Circuit Court of Appeals has suggested certain factors to consider to assess whether the consent was voluntary, namely (1) whether the person was in custody; (2) whether the officers had their guns drawn; (3) whether a Miranda warning had been given; (4) whether the person was told that he had the right not to consent; and (5) whether the person was told that a search warrant could be obtained. See United States v. Torres-Sanchez, 83 F.3d 1123,

1129-30 (9th Cir. 1996). No one factor is determinative in this assessment. <u>United States v. Castillo</u>, 866 F.2d 1071, 1082 (9th Cir. 1989).

With regard to these factors. Rocca was standing on his own property and had voluntarily opened the door to speak with the officers. He was not in custody at the time the consent was sought nor had he been restrained in any way. Although the officers were armed no gun was drawn when the consent was solicited. Officer Henikman had holstered his firearm in order to conduct a pat search of the defendant which occurred soon after the initial contact with Rocca. No gun was pointed at Rocca nor was he threatened by the brandishment of a firearm during the colloquy. Since Rocca was not in custody in any way no <u>Miranda</u> warning was required and none was given. Although Rocca was not told that he had the right not to consent, there is no suggestion in the evidence that he was equivocal or confused in his acquiescence to the officers' request to inspect of his shotgun. Failure to inform the suspect that he has a right to refuse to consent is not dispositive. <u>United States v. Mendenhall</u>, 446 U.S. 544 (1980). He was not told that if he did not consent a search warrant could be obtained or might be sought. The preponderance of the evidence leads me to conclude that the consent to enter the trailer for the purpose of inspecting a shotgun was freely and voluntarily given by Rocca.

This conclusion is not altered by the fact that the officers indicated that they wanted to inspect the firearm to see if it had been stolen. No officer

misrepresented his identity to obtain consent to entry nor did they misrepresent the scope or purpose of their investigation or go beyond the scope of Rocca's consent to entry. The record is void of any evidence of coercive police conduct or threats against Mr. Rocca verbally or through the use of a weapon. The presence of two or three officers did not convert the uncoersive encounter into a coercive one. The two officers at the rear of the trailer did not come to the front of the trailer until after the consent of entry had been obtained.

There is no evidence that Rocca was intimidated by the number of officers present or their possession of weapons. I reject any allegation directly or implied that the police obtained consent to enter and inspect the shotgun based upon any police conduct constituting intimidation. Cases cited by the defendant relating to the police obtaining consent at the point of a gun are factually distinguishable.

Mr. Rocca also complains that he was arrested without having been given his Miranda warnings. Docket 12, Memorandum, p.6. Mr. Rocca was formally arrested after the officers lawfully inspected the shotgun and determined that its possession was unlawful because of its barrel length. At the time of his arrest the police had probable cause to believe that a firearm offense.[1] Rocca had already

---

[1] Mr. Rocca is charged only with possession of a prohibitive firearm and the government has stated that it does not intend to offer any evidence in its case in chief relating to the possession, use or control over marijuana. Therefore, issues

acknowledged that the shotgun belonged to him. Accordingly, the motion to suppress lacks merit and should be denied. IT IS SO RECOMMENDED.

DATED this 14th day of December, 2005, at Anchorage, Alaska.

_____
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Friday, December 23, 2005**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **Close of Business, Wednesday, December 28, 2005**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

---

relating to whether the police exceeded the scope of the consent when they located the marijuana evidence are not a part of the motion to suppress.

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).

A05-0101--CR (JWS)    pm 12/15/05

✓ M. DIENI (FPD)
✓ D. NESBETT (AUSA)
~~00 MARSHAL~~
~~...~~
✓ Judge Sedwick